IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALNUT ACE, LLC d/b/a TOASTED WALNUT BAR & KITCHEN | : : : | CIVIL ACTION |
| v. | : : | No. 20-5023 |
| SENECA INSURANCE COMPANY, INC. | : : | |

<u>**MEMORANDUM**</u>

**Chief Judge Juan R. Sánchez**                                               **September 29, 2021**

       Plaintiff Walnut Ace, LLC, doing business as Toasted Walnut Bar & Kitchen ("Walnut Ace"), brings this action for declaratory judgment, breach of contract, and unjust enrichment against Defendant Seneca Insurance Company, Inc. ("Seneca") alleging it sustained business losses during the COVID-19 pandemic and is entitled to recovery under an insurance policy held with Seneca. Seneca now moves for summary judgment arguing Walnut Ace has not established a covered cause of loss and its claims are expressly excluded from coverage under the policy. Because there is no genuine dispute as to material fact and the policy unambiguously precludes coverage for Walnut Ace's claims as a matter of law, the Court will grant the motion and enter judgment in Seneca's favor.

**FACTS**

       Toasted Walnut Bar & Kitchen was a bar, restaurant, and nightclub in Center City Philadelphia. The bar temporarily closed in Spring 2020 due to the COVID-19 pandemic and government-ordered shutdowns of "nonessential" businesses. The bar was unable to financially recover and permanently closed in February 2021. Walnut Ace held a "Business Income Other Than Rental Value" insurance policy with Seneca. Walnut Ace claims the policy covers business interruptions like that experienced by Walnut Ace during the breakout of the COVID-19 pandemic.

1

The policy's term was October 14, 2019, through October 14, 2020, and it is undisputed that Walnut Ace made timely premium payments at all relevant times. The insured premises was the Toasted Walnut bar at 1316 Walnut St., Philadelphia, PA 19107. The Building and Personal Property Coverage Form of the policy provides in pertinent part:

> A.   **Coverage**
>
>> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

Def.'s Statement of Undisputed Material Facts ("DSUMF") Ex. B, at Seneca 000030, ECF No. 10-2.[1]

The Business Income (And Extra Expense) Coverage Form provides in pertinent part:

> A.   **Coverage**
>
>> 1.   **Business Income**
>>
>>> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations .... The loss or damage must be caused by or result from a Covered Cause of Loss. ...
>>
>> 2.   **Extra Expense**
>>
>>> a.   Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.
>>> b.   Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

---

[1] The policy is contained in Exhibit B of Seneca's Statement of Undisputed Material Facts. The policy and its attachments are numbered separately, and Seneca has collectively paginated the documents with Bates numbers Seneca 000001–Seneca 000134. The Court will therefore refer to the policy by these page numbers throughout.

> **5.   Additional Coverages**
>
> **a.  Civil Authority**
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action for civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damages property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at Seneca 000046–47.

The Policy identifies the Covered Causes of Loss as "Special." The Causes of Loss - Special Form provides in pertinent part as follows:

> **A.   Covered Causes of Loss**
>
> When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.
>
> **B.   Exclusions**
>
> **1.**   We will not pay for loss or damage caused directly or indirectly by any of the following...
>
> **a. Ordinance or Law**
>
> The enforcement of or compliance with any ordinance or law:
>
> **(1)** Regulating the construction, use or repair of any property;
>
> **3.**   We will not pay for loss or damage caused by or resulting from any of the following...
>
> **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3

*Id.* at Seneca 000063–65.

The Policy contains an Exclusion of Loss Due to Virus or Bacteria Endorsement, which provides as follows:

> **A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements...including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.
>
> **B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*Id.* at Seneca 000061.

When the COVID-19 virus arrived, and the pandemic began in March 2020, Pennsylvania Governor Tom Wolf and Philadelphia Mayor James Kenney issued a series of orders closing nonessential businesses in Philadelphia and across the Commonwealth. This included bars and restaurants. As Walnut Ace said, "the State closed restaurants and bars in surrounding counties on or around March 12th[,] then the City of Philadelphia closed these business [sic] on Monday, March 16." DSUMF ¶ 26; Pl.'s Statement of Undisputed Material Facts ("PSUMF") ¶ 26; ECF No. 11. The City of Philadelphia also erected a COVID-19 outdoor emergency management center that closed the 1300 block of Walnut Street in Philadelphia to all vehicular traffic. PSUMF ¶ 26, ECF No. 11.

On April 1, 2020, Walnut Ace submitted a Notice of Loss for business interruption losses "resulting from COVID-19 and related mandated Governmental Closure." DSUMF Ex. B, at Seneca 000001, ECF No. 10-3. The Notice states the date of loss was March 15, 2020. *Id.* Seneca denied coverage for Walnut Ace's claim after an investigation. DSUMF Ex. D, at 2–6, ECF No. 10-4. On June 2, 2020, Walnut Ace commenced this action by filing a Complaint in the

Philadelphia County Court of Common Pleas and Seneca timely removed the case to federal court. Seneca filed an Answer with affirmative defenses on October 15, 2020.

The Complaint seeks a judicial determination of each party's rights and obligations under the policy and states claims for breach of contract and unjust enrichment. Compl., ECF No. 1-1. Seneca now moves for summary judgment arguing, (1) there is insufficient evidence of any physical damage or loss at Walnut Ace's premises or any other premises in the vicinity, precluding coverage under any provision in the policy; and (2) The Virus Exclusion, Ordinance or Law Exclusion, and Acts or Decisions Exclusion each prohibit coverage even if Walnut Ace could establish physical loss or damage. Def.'s Mot. for Summ. J., ECF No. 10. The Court held oral argument on the motion on April 13, 2021.

**DISCUSSION**

The undisputed evidence shows the Toasted Walnut bar did not experience physical damage or loss as defined in the policy, nor did any other premises in the vicinity. Walnut Ace has therefore failed to establish a covered cause of loss. The Virus Exclusion and Ordinance or Law Exclusion also expressly preclude coverage for Walnut Ace's claims. There is no genuine dispute as to material fact, and Seneca is entitled to judgment as a matter of law based on a plain reading of the unambiguous policy.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The interpretation of an insurance contract is a question of law. *See Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). A court must interpret the plain language of the insurance contract read in its entirety, "giv[ing] effect to all its provisions." *Id.* (citation omitted). The words are to be construed by their "natural, plain and ordinary sense" meaning. *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997) (citing *Easton v. Wash. Cnty. Ins. Co.*, 137 A.2d 332, 335 (Pa. 1958)). When the policy language is ambiguous, the provision should be construed in favor of the insured. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016). A policy is ambiguous where it is "reasonably susceptible to more than one construction and meaning." *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (citing *Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978 (Pa. 2011)). Policy language may not, however, be stretched beyond its plain meaning to create an ambiguity. *See Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011). The insured has the initial burden of establishing coverage under the policy. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citation omitted). When the insured meets that burden and the insurer relies on a policy exclusion as the basis for denying coverage, the insurer then has the burden of proving the exclusion applies. *See id.*

Walnut Ace has failed to meet its burden of establishing coverage under the Business Income, Extra Expense, and Civil Authority provisions. Business Income coverage requires (1) the loss is "due to the necessary 'suspension' of 'operations' during the 'period of restoration;'" (2) the "'suspension' [is] caused by direct physical loss of or damage to property at'" the premises; and (3) such loss or damage "must be caused by or result from a Covered Cause of Loss." DSUMF

Ex. B, at Seneca 000046–47, ECF No. 10-2. Coverage under the Extra Expense provision applies where the insured incurred expenses it otherwise would not have incurred "if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* Finally, the Civil Authority provision requires "property other than the property at the described premises" was damaged by a covered cause of loss. *Id.* The policy defines a "covered cause of loss," in part, as "direct physical loss or damage." *Id.* at Seneca 000063–65.

The threshold determination of coverage under any provision of Walnut Ace's policy is whether there was physical loss or damage. Courts have consistently emphasized ordinary meaning of "physical" under Pennsylvania contract law and insurance coverage disputes. *See, e.g.*, *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming district court's finding of no physical damage because "if asbestos is present in components of a structure but is not in such a form or quantity as to make the building unusable, the owner has not suffered a loss … the structure continues to function – it has not lost its utility"). In the context of COVID-19, courts have reinforced this trend. *See, e.g.*, *Indep. Rest. Grp. v. Certain Underwriters at Lloyd's, London*, 513 F. Supp. 3d 525, 532 (E.D. Pa. 2021) ("Under Pennsylvania law, for [p]laintiffs to assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's "physical loss" provisions, the loss and the bar to operation from which it results must bear a causal relationship to some physical condition on the premises.") (citing *4431, Inc. v. Cincinnati Insurance Companies*, 504 F. Supp. 3d 368 (3d Cir. 2020) (holding closures due to government orders in response to the COVID-19 pandemic do not constitute "direct physical loss or damage" to property)).

Walnut Ace did not experience any physical damage or loss. When directly asked by Seneca's claims examiner on April 9, 2020, if there was "any physical damage to the property

resulting from COVID-19," Walnut Ace's owner Denise Cohen responded, "[a]s of this date there is no physical damage to property." DSUMF Ex. F, at 1, ECF No. 10-6. The Court notes Cohen then states she had to board up the doors and windows of the bar to protect against looting and some of the food and beverage inventory had spoiled. *Id.* Walnut Ace nevertheless states in opposition to the instant motion the Toasted Walnut bar experienced physical damage and loss despite the fact that she listed the loss date as March 15, 2020, and then confirmed there was no physical loss two weeks later on April 1, 2020. DSUMF Ex. C, at Seneca 000001, ECF No. 10-3; *see also* PSUMF ¶ 11 ("Admitted."). Walnut Ace has submitted photographic evidence of damage to ceiling tiles caused by an inability to perform maintenance on an air conditioning unit. PSUMF Ex. A, ECF No. 11-2. Walnut Ace also claims access to the premises was prohibited by the City's COVID-19 management zone on Walnut Street. PSUMF Ex. B, ECF No. 11-3.

Four damaged ceiling tiles, restrictions on in-person dining, the Walnut Street blockage, and spoliation of food and beverage inventory are not recoverable physical damage under the policy. No reasonable jury could find this constitutes physical damage resulting in an inability to operate the premises as intended within the coverage of the policy. Walnut Ace's contention that the Toasted Walnut bar was more akin to a nightclub, and thus unable to adapt to carry-out and delivery service does nothing to change the fact that no physical damage was incurred at the property. As the Business Income clause states, Seneca promised to pay for "actual loss" of income sustained due to the "necessary suspension" of operations during "the period of restoration." Here, no period of restoration was necessary and there was no physical damage that caused a "necessary suspension" of operations. Because Walnut Ace has presented insufficient evidence to show physical damage to the insured premises, there is no Business Income or Extra Expense coverage

available. Because there is no evidence of damage to other properties in the vicinity either, there is no Civil Authority coverage available.

Even if Walnut Ace could establish physical damage, its claims are expressly excluded by the Virus Exclusion.[2] They are also excluded by the Ordinance or Law Exclusion.[3]

---

[2] The Virus Exclusion provides Seneca "will not pay for loss or damage caused by or resulting from any virus ... that induces or is capable of inducing physical distress, illness or disease." DSUMF Ex. B, at Seneca 000061, ECF No. 10-2. The Virus Exclusion applies to "all coverage under all forms . . . including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority." *Id.*

Courts in this Circuit have upheld similar exclusions finding they are unambiguous and bar "coverage for losses caused by hazardous substances or microorganisms." *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 427 (E.D. Pa. 2020) (citing *Certain Underwriters at Lloyds of London Subscribing to Policy No. SMP3791 v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014)). This Court has held "exclusions are 'effective against an insured if they are clearly worded and conspicuously displayed, irrespective of whether the insured read the limitation or understood their import.'" *Wilson*, 492 F. Supp. 3d at 427 (citing *Frederick Mut. Ins. Co. v. Ahatov*, 274 F. Supp. 3d 273, 283 (E.D. Pa. 2017)); *see also Handel v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020); *Toppers Salon & Health Spa, Inc. v. Travelers Property Cas. Co. of Am.*, 503 F. Supp. 3d 251, 257 (E.D. Pa. 2020).

Walnut Ace's claim fits squarely within the Virus Exclusion. The Complaint alleges "all Philadelphia-based restaurants and bars" were required to "cease dine-in business...effective 5:00 p.m., March 16, 2020." Compl. ¶ 4. These measures were taken "in order to reduce the spread of the COVID-19 novel coronavirus in Philadelphia." *Id.* There is no dispute COVID-19 is a virus that caused the alleged business income loss claimed by Walnut Ace. The Virus Exclusion therefore excludes coverage for Walnut Ace's claims

[3] The policy provides Seneca "will not pay for loss or damage caused directly or indirectly by...[t]he enforcement of or compliance with any ordinance or law" that "regulat[es] the...use...of any property." DSUMF Ex. B, at Seneca 000063–65. This Court has specifically addressed the applicability of the Ordinance or Law Exclusion to COVID-19-related claims and various orders issued by Governor Wolf and Mayor Kenney. *See Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 626 (E.D. Pa. 2020). The policy at issue in *Newchops* contained a nearly identical Ordinance or Law Exclusion as that contained in Walnut Ace's policy. *Id.* ("We will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, *use* or repair of any property.") (emphasis in original). The Court ruled the orders issued by Governor Wolf and Mayor Kenney were government orders "regulating the use of property" and therefore, the Ordinance or Law Exclusion barred coverage for the plaintiff's claimed losses. *Id.* The governmental orders limiting the operations of various businesses throughout the City of

**CONCLUSION**

Walnut Ace has failed to present sufficient evidence of physical damage or loss and thus, is not entitled to coverage under any provision in the policy. Walnut Ace's claims are also excluded by the Virus Exclusion and the Ordinance or Laws Exclusion. Because there is no genuine dispute as to material fact and Seneca is entitled to judgment as a matter of law, the Court will grant the motion and enter judgment in Seneca's favor.

An appropriate order follows.

                                              BY THE COURT:

                                              /s/ Juan R. Sánchez
                                            Juan R. Sánchez, C.J.

---

Philadelphia are ordinances or laws that regulated the use of Walnut Ace's premises. Thus, Walnut Ace's claimed losses are excluded by the Ordinance or Law Exclusion as well.